## Case No. 2,064.
### BRYAN v. ALEXANDER.
### NABORS v. SAME.
[4 Woods, 529.][1]
Circuit Court, S. D. Alabama. Dec. Term, 1879.

#### LIMITATIONS—ALABAMA STATUTE—SUIT ON EXECUTOR'S BOND—RUNNING OF STATUTE.

1. A suit brought by a legatee against a surety on the bond of an executor is not, under the limitation law of Alabama, barred in six years from the date of a decree of the probate court merely ascertaining the amount due the legatee, but making no valid order directing its payment.

2. When legatees under a will were made defendants to a bill brought by other legatees against the executor to compel the payment of their legacies, and by the final decree such defendant legatees were authorized to file petitions in the case to propound their claims, held, that the statute of limitations did not begin to run against them from the date of such final decree.

3. A decree against the executor, rendered in favor of such defendant legatees on the petitions which they were permitted to file, is not a bar to an action at law against the surety on the bond of the executor to recover the amount of such decree.

[At law. Actions by Frances L. Bryan against John D. Alexander, and by Elizabeth P. Nabors against the same.] Heard on demurrer to pleas. [Demurrers sustained.]

Harry Pillans, for plaintiffs.
John Little Smith, for defendant.

BRUCE, District Judge. These two cases are heard together on demurrers to pleas of the statute of limitations in each case. The substance of the bill is as follows: The complainants are the legatees under the will of John Horn, deceased. The defendant J. D. Alexander was a surety on the bond of John A. C. Horn as executor of the last will and testament of said John Horn. On June 15, 1877, a decree was rendered in this court, sitting in equity, in favor of these plaintiffs respectively, and against John A. C. Horn as such executor. John A. C. Horn has never paid said decrees of this court in favor of complainants, although he has received sufficient assets of his testator's estate for that purpose. He has consequently

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William B. Woods, Circuit Justice, and here reprinted by permission.]

failed in his duty as such executor, and there is a breach of said bond, and the defendant Alexander is liable as surety thereon to the complainants respectively for the amounts of said decrees, with interest and costs. The pleas set up that on May 2, 1864, there had been a final settlement in the probate court of Marengo county, Alabama, from which the letters testamentary issued, which court had jurisdiction of the subject matter; and that afterwards, to wit, on June 2, 1871, a decree was rendered in this court in a cause in which William Lockhart and Sarah A., his wife, et al., were complainants, and John A. C. Horn et al. were respondents, in favor of the complainants in that suit and against John A. C. Horn; that to this suit plaintiffs herein, Bryan and Nabors, were made defendants, and subsequently they, by leave of the court, filed their petition in this court in that suit, and on June 15, 1871, procured the said several decrees against J. A. C. Horn as executor. The statute of limitations of six years in favor of sureties on bonds of executors and administrators is then set up in the different pleas.

As to the decree of 1864 in the probate court, and that of this court in 1871, and the question whether plaintiffs are barred by the lapse of more than six years since 1864, and if not, whether they are barred by the lapse of six years since the decree of the court in 1871, it will be proper to inquire what was and is the nature of the decree rendered in the probate court of Marengo county on May 2, 1864. It appears that the probate court found that there was then a balance due to Frances L. Bryan of $925, which the court ordered paid in the bonds of the Confederate States, in which bonds the funds had been by the executor previously invested under certain legislation authorizing that to be done. The amount due to B. O. Nabors and wife was $1,295, which by the decree the executor was ordered to retain in his hands subject to the further order and decree of the court, upon the determination of a certain matter. This decree of the probate court, in so far as it authorized and directed the payment of the amounts to the legatees by the executor John A. C. Horn, was not null and void. Horn v. Lockhart, 17 Wall. [84 U. S.] 570. If then, we eliminate from this decree the void portion of it, what have we left? We have an ascertainment of the amounts due the legatees under the will (the plaintiffs herein). It is said the order to pay is left intact, and that it means to pay so many dollars in good and lawful money. But the order is specific to pay in Confederate bonds, and does not admit of that meaning; indeed, it repels it. So that it is clear the court ordered a void thing to be done, which renders the entire order void. So there was nothing left but an ascertainment of the amount due to the distributees. Now, was that sufficient to start the running of the statute of limitations of six years

in favor of the sureties on the bond of the executor? The statute is in these words (Code Ala. 1876, § 3226): "Actions to be Brought in Six Years. Within six years: motions and other actions against the sureties of any sheriff, coroner, constable or any public officer, or actions against the sureties of executors, administrators or guardians, for any misfeasance or malfeasance whatever of the principal, the time to be computed from the act done or omitted by their principal, which fixes the liability of the surety." This statute has been construed by the supreme court of the state in several cases, and elaborately in the case of Fretwell v. McLemore, 52 Ala. 124, and in the cases therein cited. In that case the court goes on to show that an administration or a guardianship is treated as an entirety, though it comprises many separate acts and transactions, all of which impose liability; and the condition of the bond, according to its literal import, is broken whenever the principal violates or neglects any duty the law imposes. "For such neglect or violation the surety is chargeable by virtue of the conditions of the bond, but of themselves they do not separately create a cause of action against or fix the liability of the security." And the court then says: "Before any cause of action arises against the surety at law, and before the liability is fixed at law or in equity, there must be a judicial ascertainment of the default of the principal. * * * The judicial ascertainment creates the cause of action against the surety authorizing the enforcement of the liability imposed by the bond." Now in the light of this exposition of the statute, can this decree of the probate court of Marengo county, with the void portion of it eliminated, be held to have been a judicial ascertainment of the default of the principal upon this bond?

What is a default? It is a failure or omission to do something required. The omitted act of the principal obligor here was the failure to pay in Confederate bonds, and can a default be predicated upon an omission to do that which there is and can be no legal authority to do? True, the court found amounts to be due to the legatees, and ordered the executor to pay them, in Confederate bonds. But the default, if ascertained at all, was that payment had not been so made in Confederate bonds, which was no default at all, that portion of the decree being void. So, as we have said, there was nothing more here than the ascertainment of the amounts due to the legatees, like the verdict of a jury as to damages, which is a different thing from the judgment of a court upon the verdict, upon which execution may issue to enforce the collection of the money if it is not paid. It is argued that this court (Justice Bradley presiding) considered these decrees as valid adjudications in favor of the legatees (plaintiffs herein). True, he speaks of

them as decrees, but we must not be misled by the use of words; and while the ascertainment of an amount due from one party to another may or may not properly be called a decree, yet that it is a different thing from an ascertainment of a specific amount due from one party to another and ordering its payment, whether that be stated in the formal language of a recovery or an order to pay, or its equivalent language. It is argued that the Lockhart suit in this case was in its nature a suit to enforce the decree of the probate court, and to remove from it the obnoxious part which was an obstacle to its enforcement; but that is not the scope and purpose of the bill filed in that case. The prayer of the bill was as follows: "Orators pray that your honorable court, sitting as a court of chancery, will take full and entire jurisdiction of the settlement of said estate of John Horn, and proceed to distribute the same, to all the persons entitled thereto under the law, as the same may be determined by the court," etc., etc., and the court did not regard the decree as final, for if so, the remedy would have been in the appellate court. In the opinion Judge Bradley says: "I see nothing in the case to question the accuracy of the amounts found due to the complainants by the decree of May, 1864" (meaning the decree of the probate court of Marengo county), "from which it would seem that these amounts found to be due to the distributees, though unquestioned as to correctness, were not unquestionable, and were treated and held by the court as no more than the basis of the calculation of amounts due to the distributees from the executor for which the decrees were subsequently rendered. In that view there was nothing in the decree of the Marengo probate court which can be held to be a judicial ascertainment of the default of the principal on the bond, and therefore it did not give a right of action on the bond as against the surety, and did not start the running of the statute of limitations as to him. This applies to the case of Mrs. Bryan. In the case of Mrs. Nabors the executor was directed, as we have seen, to hold the amount found due to her, which repels the very idea of a default by the principal on the bond.

But it is contended that if the statute did not commence to run from the date of the decree of the probate court of Marengo county, it nevertheless did commence to run from the date of the decree of this court in the case in equity of Lockhart v. Horn [Case No. 8,445], rendered on June 2, 1871. In that case the bill in equity was filed by William and Sarah Lockhart and Narcissa Lockhart, legatees and heirs of John Horn, deceased, against John A. C. Horn as executor of John Horn, deceased, and as one of his heirs and legatees, and Frances L. Bryan and husband, Elizabeth P. Nabors and husband, Mary McPhaill and husband, heirs

and legatees of said John Horn, and John D. Alexander and another as sureties of J. A. C. Horn, executor. The bill had two objects: 1. To contest the validity of the will of John Horn, deceased, which had been admitted to probate in Marengo county September 13, 1858. 2. To recover from John A. C. Horn the distributive share of the complainants in the estate of their father, or, in case the will was not broken, to recover from him the balance due them as legatees under the will. The court sustained the probate of the will, and decreed for the complainants against John A. C. Horn for the amount due them by settlement in May, 1864, with interest thereon; that is, to Sarah Lockhart and husband, $1,295.78, and to Narcissa Lockhart, $1,207; and the decree has in it this clause: "And it is further ordered and decreed that the remaining defendants be authorized to make application for such order and relief as they may be entitled to ask on the principles of this decree." This decree was rendered June 2, 1871. It ordered no money to be paid to plaintiffs in the present suits; they were defendants in that suit, and the court in the decree of June 2, 1871, just referred to, did not pass upon their rights and determine them at all; though it was perhaps clear that on the principles of that decree the defendants (plaintiffs herein) were entitled to relief, and by the decree were authorized to apply for it. They did apply for it by filing petitions in that suit, which were prosecuted to decrees against John A. C. Horn, rendered June 15, 1877.

In the Lockhart suit, in this court, John D. Alexander was made a party defendant, and a decree pro confesso was taken against him, but was never made absolute, and there was no relief decreed against him in that suit. The record does not show that he ever appeared in response to the suit, and it does not appear that the question as to his being a proper party defendant in that suit was ever raised, or whether any relief could have been had against him in favor of complainants in that suit. Certainly none was had; so that the question of his liability to suit on the bond, in so far as that suit is concerned, is an open question. If he was liable to that suit, it must have been on the ground that the decree of the probate court was a judicial ascertainment of the default of his principal, and the fact that no relief was decreed against him would rather seem to imply that he was not regarded as properly a party liable in that suit on the bond of his principal; for if so, then why did the decree not run also against him as well as his principal? But however that may have been, the question recurs, if the statute of limitation of six years did not commence to run in favor of Alexander from May 2, 1864, the date of the decree in the probate court, what is there in the decree of this court of June 2, 1871, to start the running of the stat-

ute in his favor at that date? It decreed no money to these complainants, and therefore could not, and did not, judicially ascertain that the principal was in default. True, this court pronounced against the decree of the probate court, and declared a part of it void, but that was just as much void when entered in 1864 as when it was so pronounced by this court; and it gave no new rights to these plaintiffs, but simply authorized them to proceed to assert in some proper way any rights they may have, according to the principles of that decree. Decrees of courts declare legal rights, but cannot in any proper sense be said to give rights. To my mind, therefore, the decree of June 2, 1871, of this court did not give a right of action to these plaintiffs against John D. Alexander, and that decree did not set the statute of limitations in motion.

But it is argued that the plaintiffs, by filing their petitions in the Lockhart Case in this court, elected to proceed against John A. C. Horn alone, and having done so and obtained a decree against him, as they did June 15, 1877, that they cannot now proceed against Alexander, the surety on the bond. But why not? As we have already seen, Alexander was a party defendant in the original suit, but did not answer. He was also a party to the petitions filed in that suit by these plaintiffs, and the court decreed that no recovery could be had against him upon said petition, and the petitions were as against him dismissed, but without prejudice. So that when this court decreed that no recovery could be had against Alexander, it must be held to have been in that suit. The words "without prejudice" clearly indicate that the purpose was to leave the question open as to the rights of the petitioners against Alexander as surety on the bond, and that such is the legal effect seems to me clear. The demurrers to the pleas are sustained.